**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 23-2565

———————

JESSICA SERVAIS, Administrator ad prosequendum and
Administrator of the Estate of Jacob Servais

Appellant

v.

DETECTIVE JOHN CACCIA, Individually and as an agents, servants and/or
employees of Cape May County Prosecutors Office, State of New Jersey and/or Lower
Township; CITY OF VINELAND; LOWER TOWNSHIP; CHIEF OF DETECTIVES
PAUL SKILL, Cape May County Prosecutors Office, Individually and as an agents,
servants and/or employees of Cape May County Prosecutors Office, County of Cape May
and/or State of NJ; CAPE MAY COUNTY; MICHAEL JEFFERSON; OFFICE OF
CAPE MAY COUNTY PROSECUTOR; STATE OF NEW JERSEY; JOHN DOE
OFFICERS 1-100; JOHN DOE DETECTIVES 1-100; JOHN DOE CAPE MAY
COUNTY PROSECUTOR'S OFFICE EMPLOYEES 1-100; JOHN DOE LOWER
TOWNSHIP POLICE OFFICERS 1-100; JOHN DOE SUPERVISORS 1-10,
INDIVIDUALLY and in their official capacity, jointly, severally and/or in the alternative

———————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1:20-cv-14601)
District Judge: Honorable Karen M. Williams

———————

Submitted under Third Circuit L.A.R. 34.1(a)
on September 13, 2024

Before: CHAGARES, Chief Judge, ROTH and RENDELL, Circuit Judges

(Opinion filed May 13, 2025)

―――――――

OPINION[*]

―――――――

ROTH, Circuit Judge

While effectuating the arrest of Deshyamma Dalton, Cape May County Prosecutor's Office detective John Caccia shot and killed Jacob Servais. Servais' mother, in her individual capacity and as administrator of Servais' estate (together, the Estate), brought this suit under 42 U.S.C. § 1983 and related state laws,[1] claiming that Caccia's use of lethal force against Servais was excessive force in violation of the Fourth Amendment. The District Court granted summary judgment, and we will affirm.

**I.[2]**

On October 18, 2018, Officers John Caccia and Dallas Bohn planned to apprehend armed-robbery suspect Deshyamma Dalton as she returned a rental car. Servais drove to pick up Dalton at the rental agency. When Servais arrived and backed into a parking spot on the side of the agency's building, Caccia, Bohn, and Officer Sarah Best surrounded

―――――――

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

[1] The Estate does not challenge the District Court's grant of summary judgment on its claims against Paul Skill.

[2] Writing solely for the parties, we recount only the facts necessary for our disposition. Where the facts are disputed, we recite them in the light most favorable to the nonmoving party, the Estate.

him while a separate cohort arrested Dalton.[3]  Caccia parked his unmarked SUV "nose-to-nose" with Servais' sedan, with two-to-four feet between their front bumpers.[4]  Best parked perpendicular to Servais, on the driver's side of Caccia's SUV.

As the vehicles came to a stop, Bohn exited the SUV on the passenger's side and began yelling commands for Servais to surrender.  Caccia exited on the driver's side—facing the passenger's side of Servais' sedan—and also gave commands while drawing his weapon.  In response to the officers' commands, Servais did not turn off the engine, exit his vehicle, or put his hands up.  He shook his head in response to one of Bohn's commands.  He then attempted to drive out of the parking spot, first driving forward towards Bohn and bumping the passenger's side of the SUV.  Bohn moved to the right and out of the way.  Servais reversed, became stuck on the parking block behind his vehicle, and accelerated forward towards Caccia, who was standing near the front driver's side of the SUV.  Caccia, fearing that he was going to be run over by Servais' vehicle, shot Servais three times through the windshield.  Servais reversed again, before succumbing to his injuries.

---

[3] Prior to the arrest, Caccia knew that Servais "may be someone to look into" in connection with Dalton's home invasions.  Appx. 775.  While the District Court characterized Servais as "a suspected accomplice" in Dalton's robberies, *Servais v. Caccia*, No. 1:20-cv-14601, 2023 WL 4897587, at *7 (D.N.J. July 31, 2023), the record does not support any inference that Caccia had probable cause to arrest Servais for involvement in the armed robberies.  However, Caccia was aware that Servais had two active warrants unrelated to Dalton's activities, most recently for failure to appear in connection with a charge of vehicular homicide/reckless death by auto, and that Servais' criminal history included aggravated assault on law enforcement and vehicular homicide.

[4] Appx. 145.

**II.**

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367, and we have jurisdiction under 28 U.S.C. § 1291. We review a district court's grant of summary judgment de novo.[5] Summary judgment is appropriate when, viewing the facts and drawing all inferences in favor of the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6]

**III.**

As the Estate brings a claim for excessive force under the Fourth Amendment, it "must show that a seizure occurred and that it was unreasonable under the circumstances."[7] We assess the reasonableness of a seizure under the totality of the circumstances, "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," and consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."[8] The "assessment of the threat of injury. . . is crucial to identifying the magnitude of the governmental interests at stake."[9]

---

[5] *Matheis v. CSL Plasma, Inc.*, 936 F.3d 171, 176 (3d Cir. 2019).
[6] *Mack v. Yost*, 63 F.4th 211, 227 n.14 (3d Cir. 2023) (internal quotation marks and citation omitted).
[7] *El v. City of Pittsburgh*, 975 F.3d 327, 336 (3d Cir. 2020) (quoting *Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011)). Neither party disputes that Caccia's use of deadly force "seized" Servais. *See Tennessee v. Garner*, 471 U.S. 1, 7 (1985) (holding that "apprehension by the use of deadly force is a seizure.").
[8] *Graham v. Connor*, 490 U.S. 386, 396 (1989).
[9] *Johnson v. City of Philadelphia*, 837 F.3d 343, 349 (3d Cir. 2016).

It is beyond dispute that Caccia's use of deadly force was reasonable under the totality of the circumstances. We have long held that "an otherwise non-threatening individual [] engaged in vehicular flight is entitled to be free from being subjected to deadly force if it is unreasonable for an officer to believe his or others' lives are in immediate jeopardy from their actions."[10] But when the driver's actions threaten imminent death or critical injuries, deadly force is permissible.[11] Here, Servais posed a serious threat to Caccia's life and limb. Caccia stood directly in front of an accelerating vehicle when he discharged his weapon, only a few feet and moments away from a potentially life-threatening collision. The Estate's analogy to our holding in *Abraham v. Raso* fails for this reason.[12] As the Estate acknowledges, our decision in *Abraham* turned on material disputes of fact regarding the officer's position vis-à-vis the threatening

---

[10] *See Jefferson v. Lias*, 21 F.4th 74, 85–86 (3d Cir. 2021); *accord Rush v. City of Philadelphia*, 78 F.4th 610, 620 (3d Cir. 2023).

[11] *See Johnson*, 837 F.3d at 350 ("At that point there was a serious risk that [the suspect] would kill [the officer], and no reasonable juror could conclude that it was unreasonable for [the officer] to deploy lethal force in response."); *Bland v. City of Newark*, 900 F.3d 77, 84 (3d Cir. 2018) (finding no Fourth Amendment violation where the decedent's "behavior threatened the safety of the officers . . . . including by trying to drive with officers standing in close proximity to the [decedent's vehicle]."); *cf. Jefferson*, 21 F.4th at 85 (distinguishing *Bland* because "neither [the officer] nor anyone else was in danger of being struck by Jefferson as he was passing him").

[12] 183 F.3d 279, (3rd Cir. 1999).

5

vehicle, which we properly left to the jury.[13]  There is no such dispute here.[14]  Moreover, Servais had failed to comply with the officers' commands and, seconds earlier, had nearly struck Bohn with his vehicle.  When Servais turned and drove at Caccia, it was reasonable for Caccia to believe that he was about to be struck as well.  In light of Servais' noncompliance, continuously threatening behavior, violent criminal record, and the immediate threat of a deadly collision, Caccia's use of force falls within the "narrow set of circumstances" where use of deadly force is permissible against a moving vehicle.[15]

The Estate's remaining arguments rest on its assertion that Caccia had alternatives to deadly force (i.e., he should not have placed himself in front of a moving vehicle, and should have moved out of the way instead of discharging his weapon).  But even viewed in the light most favorable to the Estate, the record shows that *Servais* turned to drive towards Caccia, and the Estate's contention that Caccia should have stood elsewhere is

---

[13] *Id.* at 293–94.

[14] The Estate makes much out of the fact that Caccia's deposition testimony and post-incident statement—the only evidence that we have in the record of his position—are contradictory, as he states that he was in front of his vehicle, but also walking along its side.  This is a dispute of fact, but it is not *material*.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.") (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986) (alteration in original)).  Caccia was in the path of Servais' vehicle in either position.  The Estate is correct that we "may not simply accept what may be a selfserving account by the officer" and "must also look at the circumstantial evidence that, if believed, would tend to discredit the police officer's story," *see Abraham*, 183 F.3d at 294 (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).  But it does not point to anything in the record that contradicts Caccia's statements.

[15] *Jefferson*, 21 F.4th at 85.

6

pure speculation, as it does not identify where Caccia could have moved while sandwiched between multiple vehicles and a wall.[16]

Accordingly, as the Estate has not shown that Caccia's use of force was unreasonable under the Fourth Amendment, we will affirm the District Court's judgment.[17]

---

[16] The Estate also argues that the District Court ignored the testimony of the Estate's expert, Mickie McComb, which established that Caccia's choice of location and failure to move violated generally acceptable police policy, training, and procedures, as well as the New Jersey Attorney General's use-of-force policy. As relevant here, the state attorney general's policy prohibits firing at a moving vehicle absent imminent serious or deadly injury and no viable alternatives. We have underscored the general consensus that using deadly force against a moving vehicle is a prohibited, dangerous, and ineffective method of stopping it. *See Jefferson*, 21 F.4th at 89–91 (McKee, J., concurring) ("[P]olice departments across this country have essentially come to a consensus that shooting at fleeing suspects in vehicles is never reasonable and will always be very reckless, except for the rarest of circumstances specifically noted in those policies."). However, where, as here, there is an imminent threat of death or serious injury and no viable alternative actions, Caccia's actions are permissible under these policies.

[17] As we find no constitutional violation, we do not reach whether Caccia was entitled to qualified immunity.